SAMUEL S. PORTER v. SHERMAN COUNTY BANKING COMPANY ET AL.

FILED FEBRUARY 15, 1893.   No. 4612.

1. **Evidence:** VERDICT: REVIEW.   The evidence being in writing and practically undisputed as to the amount due the plaintiff, a verdict for a sum greatly less cannot be sustained.

2. **Private Banks:** CORPORATIONS: LIABILITY OF STOCKHOLDERS: UNPAID STOCK.   W. and T. were conducting a private bank at L., and on November 1, 1887, organized a corporation with an alleged capital of $50,000, of which they retained a controlling interest.   They turned over the deposits and assets of the private bank to the new corporation, and notes were taken from a number of the stockholders for the amount of their stock.   *Held,* That the stockholders were liable for the unpaid stock held by each, and for a sum equal to the shares so held by each for all liabilities of the bank accruing while he was a stockholder.

3 De Facto Corporations. The proof tends to show a *de facto* corporation and not a partnership.

4. Banks: FAILURE TO PUBLISH NOTICE OF CONDITION: LIABILITY OF STOCKHOLDERS. The debts having been contracted by the bank before it was in default, the provisions of sections 136 and 139 of the corporation law do not apply.

5. Misjoinder of Causes of Action: WAIVER OF DEFECT. Where there is a misjoinder of causes of action which plainly appears on the face of the petition, the adverse party should demur for that cause. If he fails to do so he will waive the defect.

ERROR from the district court of Sherman county. Tried below before HAMER, J.

*Nightingale Bros.*, for plaintiff in error.

*G. M. Lambertson* and *J. R. Scott, contra.*

*J. H. Broady, amicus curiæ.*

MAXWELL, CH. J.

This is an action against the banking company and the several stockholders thereof to recover the sum of $3,817.85, with interest. The cause of action is set forth in the petition as follows:

"The said Sherman County Banking Company, defendant, is indebted to plaintiff in the sum of $3,768.88, with interest from July 1, 1888, at nine per cent per annum, as per agreement on an account stated between said parties, for moneys deposited with and loaned to said banking company, said account being so stated on July 1, 1888, upon which statement a balance of $3,768.88 was found due plaintiff from said defendant, the Sherman County Banking Company; no part thereof has been paid, though often demanded.

"3. There is due plaintiff from said defendant, the Sherman County Banking Company, on an account cur-

rent the sum of $48.97. The following is a copy of said account with all credits, to-wit:

" DR.

To rent of room occupied by said Sherman County Banking Company from May 1, 1888, to January 1, 1889, at $20 per month............................    $160 00

To rent collected of I. J. Hughes, as agent of plaintiff, from July 22, 1888, to December 22, 1888, at $7 per month................................    35 00

" CR.

By taxes paid for plaintiff............... $146 03

$195 00

To balance due...................... $48 97

"No part thereof has been paid, though often demanded.

"4. The defendants Ezra S. Hayhurst, Lyman J. Tracy, John Hogue, Milton A. Theis, Edward E. Whaley, H. J. Shupp, Charles A. Wheeler, William H. Morris, James K. Pearson, Joel R. Scott, Charles W. Gibson, and William R. Mellor were, at the time of contracting said debt by the Sherman County Banking Company, defendant, stockholders of said corporation, and still are, and at all times since November 1, 1887, have been, stockholders of said corporation. 'The said corporation made an assignment for the benefit of creditors on December 26, 1888, and is wholly insolvent.' (The last sentence is an amendment inserted by leave of court June 20, 1889.)

"The said Sherman County Banking Company, defendant, is not a duly organized and duly incorporated company under the laws of the state of Nebraska, but has wholly failed to comply with the provisions of chapter 16, Compiled Statutes of Nebraska, in relation to giving notice, and other requisitions of organization, and has failed to comply with general provisions of law governing cor-

21

porations. Such failure to comply with the law is specific-
ally set forth as follows, to-wit:

"(*a.*) The articles of incorporation of said Sherman
County Banking Company, as filed and recorded in the
county clerk's office, of said county of Sherman, and state
of Nebraska, do not set forth the time and conditions on
which the capital stock of said corporation is to be paid in.

"(*b.*) No notice of the incorporation or organization of
said Sherman County Banking Company was ever pub-
lished by said corporation in any newspaper near the prin-
cipal place of business of said corporation.

"(*c.*) No copy of the by-laws of said corporation, with
the names of the officers appended thereto, was ever posted
in a conspicuous place at the place of doing business of said
corporation, in Loup City, Nebraska, subject to public in-
spection.

"(*d.*) No notice of the amount of all the existing debts
of said corporation was ever printed and published in any
newspaper, signed by the president and a majority of the
directors of said corporation, since the time of commencing
business of said corporation, on November 1, 1887, until
the present time.

"(*e.*) The capital stock of said corporation was not fully
subscribed at the date of filing the articles of incorporation
of said Sherman County Banking Company, in the county
clerk's office of said county, nor at any time thereafter.

"(*f.*) The capital stock of said corporation was not paid
for in cash, but about 400 shares of said capital stock, rep-
resenting a nominal value of $40,000, was paid for with
the notes of said stockholders, payable to the order of said
corporation, and part of the remaining $10,000 worth of
said capital stock was paid for with real estate, which said
corporation had no power to take and hold, and with
worthless notes and securities belonging to Edward E.
Whaley and Milton A. Theis, formerly partners, doing
business as bankers under the firm name of the Sherman

County Banking Company, and only a very small portion of said capital stock was paid for with cash, to-wit, about $3,000.

"(*g*.) No quarterly statement under oath of the assets and liabilities of said corporation was ever made and published by said corporation as required by section 7, article XI, of the constitution of the state of Nebraska, entitled 'Corporations,' subdivision 'Miscellaneous Corporations.'

"6. By reason of the failure of said corporation, defendant, to comply with the provisions of the law as set forth in paragraph 8, the defendants Ezra S. Hayhurst, Lyman J. Tracy, John Hogue, Milton A. Theis, Edward E. Whaley, H. J. Shupp, Charles A. Wheeler, William H. Morris, James K. Pearson, Joel R. Scott, Charles W. Gibson, and William R. Mellor became and are jointly and severally liable to the plaintiff for the amount of the debt of said Sherman County Banking Company, defendant, as set forth in this petition, as stockholders of said corporation."

There is a joint answer of the defendants, in which they set up various defenses.

On the trial of the cause the jury returned a verdict for the plaintiff for the sum of $1,741.02, upon which judgment was rendered. It will be observed that one of the principal grounds upon which a recovery is sought against the stockholders is, that no articles of incorporation were entered into and filed before the bank commenced business. This, however, is a mistake, as articles were both filed and published, setting forth the essential facts required by statute, and the banking company, when doing business, was a *de facto* corporation. Where there is a substantial compliance with the law, mere defects, even if they exist, will not render the articles void, therefore the stockholders are not liable for the failure to incorporate.

2. The testimony tends to show that prior to November 1, 1887, Edward E. Whaley and Milton A. Theis were

conducting a bank at Loup City; that prior to that time the plaintiff had transacted business with said firm as bankers and had on deposit with them at the time of the transfer the sum of $2,711.35. This amount the new corporation assumed. It also collected rent and other moneys for the plaintiff to make up the amount claimed.

The Sherman County Banking Company filed its articles of incorporation in the county clerk's office on the 31st day of October, 1887. These articles authorized it to transact a general banking, exchange, and collecting business at Loup City. The capital stock is fixed at $50,000, with leave to increase the same from time to time to $300,000. It occupied the banking house formerly occupied by Whaley and Theis, who were the promoters and principal stockholders of the new bank. They turned over to the new bank the furniture, safe, and fixtures of the old one, which were valued at the sum of $1,489.37; also all real estate possessed by said parties, at the value of $10,506.79; all bills receivable or bills discounted of its predecessor, at the value of $67,635.74. In consideration of these alleged assets, the new banking company assumed the liabilities of the banking firm of Whaley & Theis, being ordinary deposits, $21,668.74, and time deposits, $10,236.95. The alleged assets were thus $47,726.21 in excess of the deposits. The bank failed December 26, 1888. The plaintiff, to establish his own claim, identified a pass book furnished him by the bank, from which it appears in the handwriting of the cashier of the bank that the balance due the plaintiff on deposit on July 1, 1888, was the sum of $3,768.88. The plaintiff, it appears, was at Loup City at the time named, and he examined the books of the bank and the sum stated seems to have been agreed upon as his due. The whole account, however, shows an error of $361.61, to be deducted, which leaves a balance due the plaintiff on the first day of July, 1888 of $3,407.27 upon the deposits, and a further sum of $47.42 to $207.40 upon

an account for rent, etc.    As to the amount of deposits
there is practically no dispute, so that in no event can the
verdict be sustained.    The testimony tends to show that in
organizing the bank as a corporation but little of the cap-
ital stock was paid up.    There were 500 shares in all.    Of
these Whaley & Theis had 134 each, thus having a con-
trolling interest.    The remainder of the shares were held
by various persons, who, so far as we can see, acted in good
faith.    It is true they gave their notes to the bank in pay-
ment for their stock, but it seems to have been done in ig-
norance and without any actual intent to defraud.    The
two principal stockholders seem to have put in nothing ex-
cept the comparatively worthless assets of their private
bank, which as heretofore stated were valued at a great
sum but were worth but little.    Whaley & Theis no doubt
knew when the new bank was organized that the assets
turned over by them were comparatively worthless; but
they seem to have stood well in the community, and no
doubt were supposed to be doing a successful business, and
after the new bank was organized the stock seems to have
been of full par value.    Thus we find an attempt to charge
Morris twenty-five per cent premium on forty shares pur-
chased by him.    He refused to take the stock at the price
charged, not because it was not worth that sum, but be-
cause he had not agreed to pay that amount.    The purpose
of the reorganization no doubt was to strengthen the bank
by giving it greater credit, and as the stock could not be
sold for ready cash, notes of the persons induced to be-
come stockholders were taken.    This is a mode of doing
banking business that this court cannot commend, and
where it is done for the purpose of defrauding, the court
must denounce; but as to all the stockholders except
Whaley and Theis, it is evident that there was no attempt
to defraud, and that they are not personally liable.

Section 136, chap. 11, Gen. Stat., p. 200, is as follows:
"Every corporation hereafter created shall give notice

annually, in some newspaper printed in the county, or counties, in which the business is transacted, and in case there is no newspaper printed therein, then in the nearest paper in the state, of the amount of all the existing debts of the corporation, which notice shall be signed by the president and majority of the directors; and if any corporation shall fail to do so, all the stockholders of the corporation shall be jointly and severally liable for all debts of the corporation then existing, and for all that shall be contracted before such notice is given."

Section 139 provides, "If any corporation fail to comply substantially with the provisions of this subdivision, in relation to giving notice and other requisitions of organization, the property of all the stockholders shall be liable for the corporate debts."

It will be seen that section 139 applies only where there has been a failure to comply substantially with the law in regard to organization and giving notice, as in *Abbott v. O. S. Co.*, 4 Neb., 416. In the case at bar, however, there was a substantial compliance with the law. A forfeiture is not favored in law because it tends to rob a party of his just rights; and the same rule applies where it is sought to charge a party personally with a debt which he did not assume, but is imposed because of some alleged wrong doing on his part. In such case the acts of omission or commission must clearly bring the case within the penal provisions of the statute. Otherwise there can be no recovery beyond the limit fixed in the constitution. This principle is recognized in *Smith v. Steele*, 8 Neb., 115, where the stockholders were held liable only for debts contracted while the corporation was in default in publishing the annual notice. The question then arises as to the right to proceed against the stockholders of the bank. We do not think this case comes within either section 136 or 139 of the chapter on corporations in the General Statutes, although this case was tried before the modification

of those sections in 1891, for the reason that the debt was not incurred while the officers of the bank were in default in publishing notice of the condition of the bank; so that those sections may be left out of the case. The stockholders are each liable for the amount of his unpaid stock, "and to its creditors over and above the amount of stock held by him to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remain such stockholder." (Constitution, art. XIII, sec. 7.) The cause of action accrued before our present banking law took effect, and is not governed by its provisions. The question of usury does not arise in the case and need not be considered. Where the officers of an insolvent bank, by willful, false representations as to the amount of paid-up stock of the bank, induce persons to deposit money therein, they are guilty of a wrong—in effect, of obtaining money under false pretenses, and they will be personally liable therefor. Some objection is made to a misjoinder of causes of action, but such misjoinder appeared on the face of the petition, and was cause of demurrer on that ground. As the objection was not raised it is waived. Upon the whole case, it is one proper for a court of equity to adjust, and it is evident that amended pleadings should be filed and further testimony taken. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.